## 61855. PAGE v. THE STATE.

McMURRAY, Presiding Judge.

Defendant was indicted and convicted of the offense of bribery. A motion for new trial was filed and denied. Defendant appeals. *Held:*

1. The trial court did not abuse its discretion in denying defendant's motion for a continuance based on an article which was published in an Atlanta newspaper on the eve of the trial. There was evidence of a single factual newspaper article. Jurors need not be totally ignorant of the facts and issues involved. The voir dire disclosed no suggestion of the formation of fixed opinions as to guilt or innocence of the accused from any pretrial publicity. See Murphy v. Florida, 421 U. S. 794, 800 (95 SC 2031, 44 LE2d 589); *Heard v. State,* 141 Ga. App. 666, 669, (4) (234 SE2d 83); *Wilkes v. State,* 238 Ga. 57, 58 (2) (230 SE2d 867).

2. "In Georgia, control of the voir dire examination is vested in the discretion of the trial judge and will not be interfered with unless it is clearly shown that such discretion was abused. *Pierce v. State,* 231 Ga. 731 (204 SE2d 159) (1974)." *Ruffin v. State,* 243 Ga. 95, 97 (4) (252 SE2d 472). In the case sub judice we find no abuse of discretion in the trial court's refusal to require the jurors to be examined individually on voir dire outside the presence of each other in order to avoid educating them as to the newspaper article regarding the case. Although two of the prospective jurors had read the article and others, after their attention was drawn to the existence of the article by defense counsel, indicated they would seek it out and read it, there

is no requirement that jurors be ignorant of the facts and issues involved. Murphy v. Florida, 421 U. S. 794, 800, supra. There was no showing of prejudice to "the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination." *Whitlock v. State,* 230 Ga. 700, 706 (5) (198 SE2d 865). See also *Stinson v. State,* 244 Ga. 219, 221 (2) (259 SE2d 471); *Duckworth v. State,* 246 Ga. 631, 634-635 (4) (272 SE2d 332).

3. Material evidence is not rendered inadmissible merely because it incidentally places a defendant's character in issue. Defendant argues that his character was injected in the case when the state elicited testimony from its witness as to a prior unfortunate experience with the defendant. The witness testified that due to a prior bad experience with defendant he (witness) had invited one of his law partners to sit in on a meeting with defendant so that the presence of a third party would assure that whatever was said could be accurately reflected. This testimony even if incidentally placing defendant's character in issue was material to explain the motive, intent and course of conduct of the witness. Such evidence is not inadmissible as defendant contends. *Dampier v. State,* 245 Ga. 427, 433 (10) (265 SE2d 565).

4. "The right of a party to subject the witnesses of the opposite party to a thorough and sifting cross-examination should not be curtailed, but it is not error, even upon a cross-examination, to sustain an objection to the admission of testimony which is wholly irrelevant to the issues in the case." *Hart v. State,* 14 Ga. App. 364, 365 (7) (80 SE 909). The trial court did not err in sustaining the state's objection to the relevance of a query to its witness, the president of the City Council of Atlanta, as to, "What is the largest campaign contribution you received?" This question was totally irrelevant to the issues in the case sub judice. *Smith v. State,* 154 Ga. App. 190, 191 (2) (267 SE2d 826).

5. By his sixth enumeration of error defendant contends that the court erred when it failed to give complete and full instructions to the jury regarding a tape played to the jury. No objection was made at trial to these instructions, indeed, defense counsel expressly agreed with these instructions. This contention may not be raised for the first time on appeal. *Williams v. State,* 151 Ga. App. 266, 267 (2) (259 SE2d 671). See also *Wilcox v. State,* 153 Ga. App. 719 (2) (266 SE2d 356).

6. Defendant contends that he has been denied an accurate record on appeal due to the absence of transcripts of certain tape recordings played to the jury. However, there is no indication of any attempt made by defendant to fulfill his burden of having the record

completed in the trial court under the provisions of Code Ann. § 6-805 (f) (Ga. L. 1965, pp. 18, 24) "[W]here the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of Code Ann. § 6-805 (f)." *Zachary v. State,* 245 Ga. 2, 4 (262 SE2d 779). Furthermore, no harm resulting from the failure to transcribe these tapes has been demonstrated by defendant. *Rutledge v. State,* 245 Ga. 768, 773 (4) (267 SE2d 199).

7. After the state rested its case defense counsel sought to re-call the president of the City Council of Atlanta for further cross-examination. After some colloquy between court and counsel as to procedure and the nature of the circumstances under which defendant might be allowed to recall the state's witness for further cross-examination without losing the right to open and conclude closing arguments and the explanation by defense counsel as to the nature of the evidence he would seek to raise by way of further cross-examination of the witness the trial court ruled that, "The court would permit you the privilege of calling Mr. Arrington [the president of City Council of Atlanta] back to the witness stand for further cross examination . . . I further hold that were you to do so that you would not lose the right to open and conclude . . . However, you have stated to the Court your reasons for wishing to cross examine the witness further and the Court finds those reasons to be irrelevant and immaterial to any issue you would be entitled to raise by way of cross examination of the witness." Defense counsel was then allowed to attempt to perfect the record as to this matter. To this end, in the absence of the jury, defense counsel proceeded to cross-examine the president of the City Council of Atlanta and in the course of this examination the state repeatedly objected to the questions on the basis of relevance and materiality which objections were sustained in large number. The questions to which objections were sustained dealt with the sources and amounts of campaign contributions to the witness and were irrelevant and immaterial to the issue presented at trial. Also, they were not a proper subject matter for impeachment of the witness. The right of cross-examination is not abridged where cross-examination of a witness is not permitted as to irrelevant matters. No indication exists of any abuse by the trial court of this right to control cross-examination within reasonable bounds. The exercise of this discretion will not be controlled unless abused. *Crawford v. State,* 154 Ga. App. 362, 363 (2) (268 SE2d 414). Not only were the defense counsel's individual questions irrelevant, but the entire line of inquiry also failed to address the issues before the trial court. We find no abuse of discretion in the trial court's exercise of its discretion in sustaining objections to patently irrelevant questions

and declining to expend the court's time in receiving answers to these irrelevant questions.

8. Finally, defendant enumerates as error the denial of his motion for new trial predicated on the general grounds. The state's key witness was Atlanta councilman James Bond, to whom defendant has allegedly offered a bribe. Councilman Bond testified that he was approached by the defendant while at his office in City Hall on September 7, 1979. At that time defendant stated that he wished to discuss a zoning matter, as well as some other business dealings with the councilman and wished to set up a luncheon engagement for the following week. During this conversation with the councilman, the defendant "said that he thought that if we could get this zoning matter taken care of, that he could make contributions to me [Councilman Bond] that I could distribute among Council members." Councilman Bond brought this conversation to the attention of a succession of individuals, culminating in a report of the matter to the Commissioner of Public Safety. Subsequently, the police department equipped the councilman with electronic recording devices which the councilman had on his person when he proceeded to the restaurant for the arranged luncheon engagement with the defendant. At the restaurant the defendant and an attorney, who stated that he represented a zoning change applicant, discussed with the the councilman a particular zoning matter on Piedmont Road in Atlanta. The councilman testified that after about an hour of conversation the defendant asked the attorney to excuse himself and after he had left the table defendant stated, "that the zoning matter was very important to him, that he thought that he couldn't — if I could use my influence to influence other members of the Council and if I would vote for it myself, he thought that he could provide me with some money in return for doing that. He discussed amounts of money, suggested that he would — could extract a fee from the applicant of $2500 which we could split amongst ourselves if the zoning was changed. He also suggested that I could give a portion of my fee to Council member Arrington in order to secure his vote. He suggested I could give him $250 and that he could give him $250 out of his portion of the fee, and that further, that if we could get this one piece of property taken care of that the whole block needed to be rezoned and that we could charge each applicant a rezoning fee and make a lot of money from the deal."

The defendant and Councilman Bond arranged to meet subsequently at Councilman Bond's office. Arrangements were made by the police to record this conversation also.

The meeting took place in the office of the president of City Council. Councilman Bond escorted the defendant back from the

front desk to the office, where defendant immediately handed the councilman an envelope saying, "this was to take care of the zoning matter." The envelope contained $2,400 which the defendant and councilman divided equally. After a brief conversation, defendant left the premises and Councilman Bond turned over the $1,200 he had received to the police officers. In addition to the testimony of Councilman Bond the state presented the testimony of the president of the City Council, who testified that approximately a week prior to defendant's approaching Councilman Bond the defendant had attempted to retain the council president's law firm in regard to a zoning matter before the council and when the council president declined to accept, the defendant had offered him his watch and a pen which allegedly had been used by "the President of the United States to sign official bills." The council president also testified that some days later after the dates of the above discussed circumstances involving Councilman Bond defendant had asked the council president did Councilman Bond "take care of you." Additionally, some, but not all of the recordings of conversations between Councilman Bond and defendant were entered into evidence.

Defendant testified that the money which he had given Councilman Bond was a campaign contribution and that when the zoning application in question was given an adverse ruling by the development committee of the full city council and was turned down and sent back to committee that he did not expect Councilman Bond to give back the contribution because it was a campaign contribution and not expected back.

The resolution of the conflicts in evidence is for the jury. Upon a careful review of the transcript and record we find and hold that a rational trier of fact, the jury in the case sub judice, could reasonably have found from the evidence adduced at trial, proof of guilt of the defendant beyond a reasonable doubt of the offense of bribery. *Snell v. State,* 246 Ga. 648 (272 SE2d 348); *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528).

*Judgment affirmed. Quillian, C. J., and Pope, J., concur.*

DECIDED JUNE 30, 1981 —
REHEARING DENIED JULY 20, 1981 ▮

*Michael C. Ford,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Margaret V. Lines, Gordon Miller, Assistant District Attorneys,* for appellee.